Robert N. HENDERSON
v.
READING COMPANY.

Robert N. HENDERSON
v.
TIDEWATER GRAIN COMPANY, Isbrandtsen Company, Inc., T. J. Stevenson & Company, Inc., and Whitehall Steamship Corporation.

Robert N. HENDERSON
v.
CARGILL, Inc.

Civ. A. No. 12677, No. 253 of 1953, No. 277 of 1953.

United States District Court
E. D. Pennsylvania.

Nov. 20, 1956.

Richter, Lord & Levy, Philadelphia, Pa., for plaintiff.

John R. McConnell, Henry R. Heebner, Philadelphia, Pa., for Reading Co.

Krusen, Evans & Shaw, Philadelphia, Pa., for. Whitehall S. S. Corp., T. J. Stevenson & Co. and Isbrandtsen Co.

KIRKPATRICK, Chief Judge.

The plaintiff in these actions is suing to recover damages for injuries sustained by him in two separate and unrelated accidents. The first accident occurred on August 13, 1950, upon the steamship Sea Leader, owned by the defendant Whitehall, operated by the defendant Stevenson and chartered by the defendant Isbrandtsen. The second accident occurred two years later in the basement of the Reading company's grain elevator. The plaintiff was employed by the Reading Company as a carpenter, a job involving a general repairman's duties.

The suits arising out of the first accident were tried in admiralty, Dugan-McNamara, the stevedore, and the Reading Company having been impleaded. The action against the Reading Company, based on the second accident and brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., was, by stipulation, tried with the admiralty actions, a jury trial having been waived.

### The First Accident

At the time the first accident occurred, the Sea Leader was berthed at a pier alongside the Reading Company's grain elevator and was discharging a cargo of grain into the elevator by means of an ap-

paratus known as a "marine leg", a sort of steel frame some 60 feet long and weighing several tons. The leg contained buckets on an endless belt and, by raising and lowering the boom to which it was hinged and swinging the leg itself outward or inward as required, it could be spotted to reach into any part of the hatch square which was being worked. In order to swing or pull the leg to the outboard side of the hatch, a wire cable was attached to its lower end and rigged so as to pass through a block which in turn was attached by a "strap" to a staple welded to the deck of the ship. Thence, the wire cable passed to the winch. The Reading Company owned the marine leg. The winch, staple and wire cable were part of the vessel's equipment.

■ The stevedore's men had rigged the cable and one of them was operating the winch, when the staple to which the block was attached broke and the marine leg, released, swung back, striking the plaintiff who was standing on the deck on the inshore side of the hatch. The staple had been welded to the deck and was defective in that the welding was insufficient and the staple had rusted through a part of its diameter where it was attached to the deck. The ship was unseaworthy. Liability follows.

The main controversy in connection with this accident arises from the ship's effort to put the blame upon the stevedore, in order to recover from it on the theory of indemnity in the third-party action. The ship's contention in this respect is that the staple, regardless of its condition, would not have been strong enough to withstand the strain put upon it in moving the marine leg, that it was obvious to anyone familiar with vessels that it was not intended for such use, that pad eyes, which were much heavier and stronger than the staple, were available and could and should have been used and that it was negligence on the part of the stevedore's employees to use the staple in rigging the marine leg. There was also some testimony to the effect that the wire cable was rigged so that the lead, instead of being direct, was off to one side, thereby putting additional strain on the gear, but I find that this was not the case.

There was a good deal of dispute about the proper descriptive term to apply to the piece of equipment in question. I find that it was not a pad eye, which is a plate or casting with an eye normal to its surface and formed solid with the plate, but a staple, without any pad or plate, U-shaped, with its ends welded to the deck. It was intended primarily for lashing deck cargo. Staples are used with both light and heavy cargo. The U-shaped bar which formed this one was an inch and a half in diameter, of a type used with heavy cargo. There was no reason for the longshoremen to think that, if sound, it would not have been quite sufficient to take the strain put upon it, and it is not argued that they could or should have known that it was lightly welded and rusted. The ship's contention depends upon the testimony of the mate to the effect that the staple was only one-half inch in diameter, in which case there might have been room to argue that it was negligent to use it in swinging the marine leg. However, in view of the great weight of the evidence, I cannot accept the mate's testimony upon this point.

■ I find, therefore, that the accident was caused by the unseaworthiness of the vessel and that it was not caused or contributed to by any negligence on the part of the stevedore. There is no evidence that it was caused or contributed to by any negligence on the part of the Reading Company.

### The Second Accident

■ The second accident happened while the plaintiff, in the course of his employment, was walking through the basement of the Reading Company's grain elevator. He slipped upon an excessive and dangerous accumulation of water and grain on the floor and fell, striking his head and back. In permitting the accumulation of grain and water to exist for an unreasonable time, the Reading Company was negligent. As a

result of the second accident, the plaintiff's injuries sustained in the first accident were somewhat aggravated.

### Damages

■ I find that the plaintiff has suffered damages as a result of his two accidents as follows:

The first accident, $12,500.

The second accident, $2,500.

■ The plaintiff was not contributorily negligent in either accident.

The libellant (plaintiff) was not guilty of laches in the bringing of the admiralty action and there has been no prejudice to the respondents by reason of his delay.

Appropriate forms of decree and judgment may be submitted.